## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

ELISHA RICHTER                          :
                                        :       CIVIL ACTION
                      Plaintiff,        :
                                        :       NO.:
        v.                              :
                                        :
YORK OPERATING, LLC d/b/a YORK          :
NURSING AND REHABILITATION              :
CENTER; MAPLEWOOD OPERATING,            :
LLC d/b/a MAPLEWOOD NURSING             :
AND REHABILITATION CENTER;              :
MAPLEWOOD NURSING AND                   :
REHABILITATION CENTER, P.A., L.P.;      :
MAPA OPERATING, LLC; BEDROCK            :
CARE; PARKHOUSE NURSING AND             :
REHABILITATION CENTER, L.P.;            :
CLIVEDEN OPERATING, LLC d/b/a           :
CLIVEDEN NURSING AND                    :
REHABILITATION CENTER; CLIVEDEN:
NURSING AND REHABILITATION              :
CENTER, P.A., L.P.; CARE PAVILION       :
OPERATING, LLC d/b/a CARE               :
PAVILION NURSING AND                    :
REHABILITATION CENTER; CARE             :
PAVILION NURSING AND                    :
REHABILITATION CENTER, P.A., L.P.;      :
TUCKER OPERATING, LLC d/b/a             :       **JURY TRIAL DEMANDED**
TUCKER HOUSE NURSING AND                :
REHABILITATION CENTER; TUCKER           :
HOUSE NURSING AND                       :
REHABILITATION CENTER, P.A., L.P.;      :
YISROEL LANDAU; SHANITA                 :
REDDING; and CHRISTINA KLEIN            :
                                        :
                      Defendants.       :
_____:


## CIVIL ACTION COMPLAINT

Elisha Richter (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and

through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1.      Plaintiff has initiated this action to redress violations by York Operating, LLC d/b/a York Nursing and Rehabilitation Center, Maplewood Operating, LLC d/b/a Maplewood Nursing and Rehabilitation Center, Maplewood Nursing and Rehabilitation Center, PA, L.P., MAPA Operating, LLC, Bedrock Care, Parkhouse Nursing and Rehabilitation Center, L.P., Cliveden Operating, LLC d/b/a Cliveden Nursing and Rehabilitation Center, Cliveden Nursing and Rehabilitation Center, P.A., L.P., Care Pavilion Operating, LLC d/b/a Care Pavilion Nursing and Rehabilitation Center, Care Pavilion Nursing and Rehabilitation Center, P.A., L.P., Tucker Operating, LLC d/b/a Tucker House Nursing and Rehabilitation Center; Tucker House Nursing and Rehabilitation Center, P.A., L.P.; Yisroel Landau, Shanita Redding, and Christina Klein (hereinafter collectively referred to as "Defendants") of Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq.*), the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq.*), and the Philadelphia Fair Practices Ordinance ("PFPO").  As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.  There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3.      This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying

the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania.

5.      Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge of Discrimination with the Philadelphia Commission on Human Relations ("PCHR") and dual filing her Charge with the Equal Employment Opportunity Commission ("EEOC").   Plaintiff has further filed this instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC and Dismissal and Notice of Rights from the PCHR.

## PARTIES

6.      The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

7.      Plaintiff is an adult individual, and she resides at 113 Birch Avenue, Bala Cynwyd, PA 19004.

8.      York Operating, LLC d/b/a York Nursing and Rehabilitation Center, Maplewood Operating, LLC d/b/a Maplewood Nursing and Rehabilitation Center, Maplewood Nursing and Rehabilitation Center, PA, L.P., MAPA Operating, LLC, Parkhouse Nursing and Rehabilitation Center, L.P., Cliveden Operating, LLC d/b/a Cliveden Nursing and Rehabilitation Center, Cliveden Nursing and Rehabilitation Center, P.A., L.P., Care Pavilion Operating, LLC d/b/a Care Pavilion Nursing and Rehabilitation Center, Care Pavilion Nursing and Rehabilitation Center, P.A., L.P., Tucker Operating, LLC d/b/a Tucker House Nursing and Rehabilitation Center; Tucker House Nursing and Rehabilitation Center, P.A., L.P. are all registered entities with the Pennsylvania Department of State, and under the umbrella of Bedrock Care (hereinafter all collectively referred to as "Defendant Entities").

3

9.     Plaintiff was hired initially by Maplewood Operating, LLC d/b/a Maplewood Nursing and Rehabilitation Center and then subsequently transferred to York Operating, LLC d/b/a York Nursing and Rehabilitation Center, but during her employment with Defendants, she received paystubs and W-2 forms from MAPA Operating, LLC, Maplewood Operating, LLC, and York Operating, LLC.   However, Plaintiff was *functionally and legally* an employee of all Defendant Entities.   By way of examples only:

      (A) Defendant Entities operate as a single enterprise;

      (B) Defendant Entities transfer employees and management amongst different locations and share staff and employees amongst different locations, doing business under many business names;

      (C) Defendant Entities utilize overlapping documents, policies, and information amongst each entity; and

      (D) Defendant Entities share employees, resources, have the same owner(s) and high-level management, share financial controls, follow the same directives, use the same employment documents within the enterprise regardless of the Defendant, have the same procedures and benefits for the entire enterprise of all Defendants, and merely operate as a single business with several property listings under the aforesaid different business names.

10.     Defendant Yisroel Landau (hereinafter individually referred to as "Defendant Landau") was the Administrator originally of Defendants' Maplewood Nursing and Rehabilitation Center and then the York Nursing and Rehabilitation Center and is a high-level decision maker overseeing the business operations of both entities, as well as the terms and conditions of employment for employees (including Plaintiff) for both entities, including but not limited to overall hiring, firing, discipline, benefits, compensation, and other business operations.

11.     Defendant Shanita Redding (hereinafter individually referred to as "Defendant Redding") was the Assistant Administrator and then Administrator of Defendants' Maplewood Nursing and Rehabilitation Center and is a high-level decision maker overseeing the business operations of said entity, as well as the terms and conditions of employment for employees

4

(including Plaintiff) for said entity, including but not limited to overall hiring, firing, discipline, benefits, compensation, and other business operations.

12.     Defendant Christina Klein (hereinafter individually referred to as "Defendant Klein") was the Human Resource ("HR") Director for Defendants' York Nursing and Rehabilitation Center and is a high-level decision maker overseeing the business operations of said entities, as well as the terms and conditions of employment for employees (including Plaintiff) for said entities, including but not limited to overall hiring, firing, discipline, benefits, and other business operations.

13.     Upon information and belief, two of the locations in which Defendants collectively operate from (and are listed as the primary addresses on the Pennsylvania Department of State for the entities) are 6212 Walnut Street, Philadelphia, PA 19139 and 201 N. Presidential Blvd., Bala Cynwyd, PA 19004.   Plaintiff, however, was primarily originally based out of Defendants' Maplewood Nursing and Rehabilitation Center located at 125 West School House, Philadelphia, PA 19144, and then from Defendants' York Nursing and Rehabilitation Center located at 7101 Old York Road, Philadelphia, PA 19126.

14.     At all times relevant herein, Defendants acted through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## **FACTUAL BACKGROUND**

15.     The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

16.     Plaintiff was employed by Defendants for approximately 7 months, from on or about January 23, 2023, until her unlawful termination (discussed further *infra*) on or about August 17, 2023.

17.    Plaintiff was originally hired as a Human Resources ("HR") Director for Defendants' Maplewood Nursing and Rehabilitation Center located at 125 West School House, Philadelphia, PA 19144.

18.    While working at Defendants' aforesaid Maplewood location, Plaintiff was originally primarily supervised by Defendant Landau (Jewish), until his transfer to Defendants' York Nursing and Rehabilitation Center in or about the end of March of 2023, at which time Assistant Administrator, Defendant Redding (non-Jewish) assumed the role of Administrator of Defendants' aforesaid Maplewood location.

19.    Plaintiff is an adult female of Jewish descent who practices Judaism.

20.    Throughout her employment with Defendants, Plaintiff was a hard-working employee who performed her job well.

21.    Notwithstanding her strong job performance, throughout her employment with Defendants, Plaintiff was subjected to harassment, discrimination, and disparate treatment as a result of her familial status, race, ancestry, and religion, and her actual/perceived/record of disabilities.

22.    Plaintiff was originally hired by Defendants' Vice President of Operations, Brian Powers (hereinafter "Powers").

23.    Prior to her hire, Plaintiff informed Powers that she would need to leave early (before 4 p.m.) on Mondays, Tuesday, and Fridays as needed, to be available as a caregiver for her two children.  Plaintiff further requested paid time off for Jewish holidays and to leave early on Fridays as needed to prepare for the Sabbath (a reasonable religious accommodation).

24.    Plaintiff is a single mother, who has shared custody of her two children, and is a caregiver and provides support for the same.

25.     Powers confirmed by email that Plaintiff would be permitted to leave early on Mondays, Tuesdays and Fridays as needed as a single caregiver for her children and would receive paid time off for the Jewish holidays as conditions of her employment.

26.     Specifically, Powers informed Plaintiff that he understood her need to leave early on Friday for the Sabbath, stating "I get the Jewish thing."

27.     Nonetheless, almost immediately after her hire, Defendant Redding began to subject Plaintiff to hostility and animosity because of her need to leave early on Mondays, Tuesdays, and Fridays to be a caregiver to her children.

28.     Defendant Redding also exhibited clear frustration with Plaintiff's and other employees' need to leave early or take time off for the Sabbath and other Jewish holidays.

29.     On or about March 29, 2023, Defendant Landau was transferred to Defendants' York facility, and Defendant Redding became the Administrator of Defendants' Maplewood facility, directly overseeing Plaintiff.

30.     Upon Plaintiff's observations and belief, Defendants' organization, including its multiple aforementioned nursing and rehabilitation centers, were run very haphazardly, with poor management and organization, lack of training, and regular shifting of employees and managers to different locations without proper training or knowledge of job descriptions and duties.

31.     The aforementioned lack of training, organization, and constant shifting of management caused Plaintiff increased anxiety and stress, as she had no experience in HR (which she informed Defendants upon her hire and for which she was promised extensive training).  This increased anxiety and stress exacerbated Plaintiff's serious health conditions.

32.     At all relevant times hereto, Plaintiff has and continues to suffer from several ADA qualifying (as well as PFPO qualifying) health conditions, including but not limited to anxiety and depression (and associated complications).

33.     Defendants' management, including but not limited to Defendant Landau, were aware of Plaintiff's health conditions early on in her employment with Defendants, because:

      a. Plaintiff identified as having disabilities on her initial employment application; and

      b. In or about late March of 2023, Plaintiff's personal friend, Jennifer Sherby (hereinafter "Sherby"), came to Defendants' Maplewood location to drop off Plaintiff's anxiety medication. At that time Defendant Landau informed Sherby that Plaintiff was doing great but "needs to relax." Sherby replied by informing Defendant Landau that Plaintiff suffered from anxiety.

34.     In or about the same timeframe, Plaintiff was informed by Regional Director, Hudi Gerwitzman (Jewish, hereinafter "Gerwitzman"), that Defendant Redding was not happy with Plaintiff's schedule, specifically her familial responsibilities and need to leave early to be a caregiver for her children, as well as her religious accommodation for time off for Jewish holidays.

35.     As a result of Defendants' aforesaid management's frustration and hostility toward Plaintiff's religious accommodations and familial responsibilities/status, Plaintiff reached out for clarity to Powers as he had guaranteed the same upon her hire.

36.     Powers informed Plaintiff that they would like to find Plaintiff another position that would work with her religious accommodations and familial responsibilities/status at another location.

37.     On or about April 4, 2023, Powers offered Plaintiff the part-time position of HR Generalist at Defendants' York facility located at 7101 Old York Road, Philadelphia, PA 19126, and the part-time position of Medicaid Pending ("MA") Specialist.

38.     While awaiting her transfer to Defendants' York facility for her new job roles, Plaintiff continued to be subjected to hostility and harassment by Defendant Redding, who made known her displeasure that Plaintiff needed time off for Passover in early April of 2023.

39.     Importantly, during the Passover 2023 holiday, Defendants had posted Plaintiff's same job position.

40.     On or about April 17, 2023, Defendant Redding also informed Plaintiff that she wanted to only hire employees without children or caregiver responsibilities in the future.   When Plaintiff informed Defendant Redding that it was illegal to discriminate based on familial status, Defendant Redding ignored her.

41.     Plaintiff also complained to Gerwitzman and Defendant Landau of Defendant Redding's aforesaid discriminatory comments regarding familial status, but her concerns were ignored.

42.     On or about May 10, 2023, Plaintiff began working at Defendants' York facility under the supervision of Defendant Klein (non-Jewish).

43.     Immediately upon falling under the supervision of Defendant Klein, Defendant Klein threatened Plaintiff that she could "make anything look like someone else's fault."

44.     Upon Plaintiff's personal observations and beliefs, Defendant Klein was incredibly rude and unprofessional, routinely telling employees to "shut their mouth," "you're being and asshole," and "you're being a brat."

45.     Defendant Klein was also incredibly discriminatory toward Plaintiff and at least one other Jewish employee, as she [Defendant Klein] mockingly referred to both Plaintiff and the other employee as a "wandering Jew."

46.     Over the next several weeks, Plaintiff was shuffled between several of Defendants' facilities in different locations for purported training.   However, several times Plaintiff was shifted to another location, the management purportedly assigned to train her at each location had no warning that she would be coming or even what to train her for.

47.    During one such alleged training session for her part-time MA specialist duties at Defendants' Care Pavilion facility on or about June 1, 2023, the non-Jewish Director of the Business Office was talking to another employee in front of Plaintiff, offensively referring to a resident who "was jewing other residents" by selling them pretzels to raise money.

48.    As a result of the aforesaid discriminatory and offensive Jewish slur combined with the fact that the management at Defendants' Care Pavilion facility were not prepared for Plaintiff with their system access, and the trainer did not know the purpose of Plaintiff's training, Plaintiff returned to Defendants' York facility.

49.    Following Plaintiff's return to Defendants' York facility, Plaintiff complained to Defendant Landau, HR Personnel Rhea Goodwin (hereinafter "Goodwin"), and the Assistant Administrator about the aforementioned incidents at Defendants' Care Pavilion.

50.    Shortly thereafter, on or about June 12, 2023, Defendant Landau and Gerwitzman reached out to Plaintiff to inquire whether she wanted to continue working in the part-time HR Assistant/part-time MA specialist role or begin to handle Defendants' labor reports as a Labor Specialist, as the current Labor Specialist was not completing the reports as directed.

51.    Plaintiff informed Defendant Landau and Gerwitzman that she was happy to perform either job, but that she wanted some clarification as to her job functions, title, and training, which to date had been disorganized and/or nonexistent.  Specifically, Plaintiff requested an offer letter setting forth the specification of her new Labor Specialist duties.

52.    Defendant Landau and Gerwiztman informed Plaintiff vaguely that she could be a "Director of Labor and Data Analytics" – heretofore a non-existent title within Defendants.

53.    Thereafter, on or about June 29, 2023, Plaintiff reported to Defendants' Tucker House location for training with Scheduler, Olivia Collins (non-Jewish, hereinafter "Collins").

However, Plaintiff was provided with only two days of actual training before she was thrown into the job of completing the complicated and time-consuming labor reports.

54.    On or about July 3, 2023, when Plaintiff returned to Defendants' York facility, she was provided with three labor reports to complete within the day on her own, in addition to her assigned HR and other duties, which caused her extreme stress and anxiety, exacerbating her aforesaid serious health conditions.

55.    On or about July 4, 2023, Defendant Landau emailed Plaintiff that her new job title was Director of Labor and Data Analytics, without any further clarification.

56.    Importantly, the Scheduler who was assigned to handle the aforesaid labor reports, Monica Wilkins (African-American, non-Jewish, hereinafter "Wilkins") had not being performing her job duties for months, which resulted in Plaintiff having to take over the reports without any assistance or training from Wilkins.  Nonetheless, upon information and belief, Wilkins was not disciplined and/or terminated for her performance concerns and is still working for Defendants.

57.    On or about July 6, 2023, Rosanna Dale (hereinafter "Dale") emailed asking for clarification about Plaintiff's position so she could accurately place Plaintiff on the proper distribution lists and provide proper access.  Defendant Landau replied that Plaintiff's title was Director of Labor and Data Analytics, to which Dale responded that Defendant Landau could not give out titles that were not on the list.

58.    Thereafter, on or about July 10, 2023, Defendant Klein informed Plaintiff that she [Defendant Klein] was needed at Defendants' Kingston facility location for the next four weeks.

59.    When Plaintiff asked Defendant Landau what the plan was for when Defendant Klein was at the Kingston facility, Defendant Landau informed Plaintiff that she would need to cover Defendant Klein's job duties at Defendants' York facility, on top of her own HR duties and

her newly assigned labor report responsibilities. Defendant Landau further informed Plaintiff that corporate would send someone to assist Plaintiff, but she was never provided with any assistance.

60.     Because Defendant Klein's Director of HR duties were a full-time position of their own, and added to Plaintiff's already overloaded responsibilities, it was nearly impossible for Plaintiff to complete all of the work being assigned to her. This combined with the fact that Plaintiff had still not been given a job description, proper training, or any guidance as to which of her duties took precedence, caused Plaintiff to suffer increased physical and emotional distress, severely aggravating her aforesaid serious health conditions.

61.     In addition to the foregoing virtually impossible workload assigned to Plaintiff, on or about August 1, 2023, Defendant Landau informed Plaintiff that corporate wanted weekly orientations, which was also expressed to Plaintiff during a weekly phone meeting with corporate retention and recruiting. When Plaintiff requested the possibility of cutting down on the new employee interviews they were performing, her request was denied.

62.     Plaintiff's aforesaid health conditions continued to worsen around this time, as Defendant Landau and Defendant Klein routinely provided Plaintiff with conflicting directions. For example, Defendant Klein wanted to handle the payroll for the York facility while working from Defendants' Kingston facility, but Defendant Landau had informed Plaintiff that it was her job. Plaintiff requested that Defendant Landau send out an emailing confirming her job duties to both her and Defendant Klein, but he failed to do so.

63.     Plaintiff informed management, including but not limited to Defendant Klein and Defendant Landau, that it was impossible for her to perform payroll, new employee orientation, labor reports, and handle any employee HR complaints in Defendants' York facility at the same time, and that she was suffering from extreme anxiety. However, her concerns were ignored.

64.    Instead, Goodwin and Gerwitzman decided that in addition to the above overwhelming number of duties assigned to Plaintiff, they wanted companywide mock audits before the state came to audit the labor reports and other records.

65.    As a result of being overloaded with the work of almost three employees and the aforesaid harassment, disparate treatment, and discrimination she had been subjected to as a result of her familial status, race, ancestry, and religion, Plaintiff suffered a severe panic attack while working on or about August 4, 2023.   Specifically, Plaintiff began to hyperventilate, feel shaky, and her heart began to beat irregularly.

66.    Plaintiff then went to Defendant Landau's office while shaking and crying to inform him that she needed to go home.  She further texted Defendant Klein that she was suffering from a panic attack and needed to leave early and go home to care for her aforesaid health conditions (a reasonable accommodation under the ADA and the PFPO).

67.    Thereafter, on or about Monday, August 7, 2023, Plaintiff texted Defendant Landau that she was suffering from a flare-up of her anxiety.  Plaintiff also again requested her job title and description.

68.    On or about Wednesday, August 9, 2023, Plaintiff sent the following email informing Defendant Landau that she was undergoing treatment with her psychiatrist and again requested her job title and description, in order for her doctor to best determine what medical accommodations she may need; however, Defendant Landau failed to respond until the following week:

*Hi Yisroel,*

*I met with my psychiatrist this morning and an additional medication was added to my treatment plan.  In order for the doctor to provide the organization with a comprehensive recommendation for accommodations based on my disability she is in need of the job description with my title that I requested on Monday. If you could send that to me this week I would greatly appreciate it as I want to do my best for the company but need the organizations partnership on this please.*

*With much appreciation,*

*Elisha*

69.     The following day, on or about August 10, 2023, when Defendant Klein returned to Defendants' York facility, Defendant Landau informed Plaintiff that she needed to focus on the labor reports; however, Defendant Klein required that Plaintiff perform other HR duties.  This conflicting direction, lack of organization, and failure to inform Plaintiff of her job description and hierarchy of duties, caused Plaintiff additional stress, further exacerbating her aforesaid health conditions.

70.     On or about August 11, 2023, Defendant Landau, who had been planning to leave Defendants' York facility for another facility informed Plaintiff that his replacement, who had been due to start on August 14, 2023, had backed out.  Defendant Landau hostility informed Plaintiff that as a result, he was now able to put her on a 30-day performance improvement plan ("PIP"), without explicitly stating what alleged performance issues existed.

71.     Plaintiff was confused at the notion that she would need to be placed on a PIP, as she had been performing her job duties well and to the best of her ability despite having no idea as to what her exact job description entailed.  At this time, Plaintiff renewed her request for her exact job title and description, including a full list of her expected duties.

72.     Notably, Defendant Landau informed Plaintiff that she was going to be placed on a clearly retaliatory PIP just 2 days after Plaintiff informed Defendant Landau and Defendant Klein of the status of her aforesaid health conditions and repeated request for her job description to aid her psychiatrist in determining what accommodations she may need.

73.     Thereafter, on or about August 15, 2023, Defendant Landau finally responded to Plaintiff's request for her job title and description (including list of expected duties), with a

completely false and inaccurate email regarding her alleged job history with Defendants, including but not limited to:

a. Stating for the first time that Plaintiff had purportedly been "removed" from her original Director of HR position at Defendants' Maplewood facility due to "her inability to meet the requirement of the job description." This was patently untrue. As discussed, *supra*, Plaintiff was given a part-time HR Generalist/part-time MA specialist position at Defendants' York facility, due to management's harassing and criticizing Plaintiff for her familial status (*i.e.,* need to leave early to be a caregiver for her children) and religious accommodation (*i.e.,* time off to celebrate Jewish holidays), all of which had been promised to her upon her hire and set forth in initial emails with Powers;

b. Stating that Plaintiff had "declined" the MA specialist position in favor of completing daily nursing reports, which was purportedly created "specially for [Plaintiff]." This is equally false and inaccurate. Plaintiff did not decline the MA specialist position; rather, when she had been sent for initial training at Defendants' Care Pavilion, the training personnel had been unaware that she was coming, did not know what to do with her, did not provide her with a computer or phone access, and she was subjected to offensive comments/slurs regarding a Jewish resident. When Plaintiff returned to Defendants' York facility, she was then offered the ability to take on labor reports instead of the MA specialist position; and

c. Defendant Landau then stated that he would put together a list of job duties, expectations and deadlines in writing for [Plaintiff's] current position HR

assistant/nursing labor analytics."[1]    Nonetheless, Defendant Landau failed to provide this list to Plaintiff before her abrupt and unlawful termination (set forth *infra*).

74.    On or about August 16, 2023, Plaintiff's young son was suffering from a fever, and she needed to take time off to care for him; however, because of the overwhelming amount of work that needed to be done and to continue to be a team player, she offered to work from home while caring for her son.

75.    The following day, on or about August 17, 2023, Plaintiff visited Defendant Landau in his office to inform him that his aforementioned August 15, 2023 email was completely inaccurate and false for the above reasons (*see* paragraph 73, *supra*), but he ignored her concerns.

76.    Thereafter, in or about the morning of August 17, 2023, Defendant Landau informed Plaintiff that he was going to provide her with a clear outline of her reporting structure, job duties, and deadlines by the end of the day.

77.    That same day (August 17, 2023), Defendant Klein advised Plaintiff to focus on completing labor reports, which Plaintiff did.  However, Plaintiff discovered that a "bejeweled" sign with the words "wandering Jew" that Defendant Klein had constructed early on for Plaintiff's desk when she had transferred to the York facility (and which she had placed in a drawer as she found it offensive) had been placed back on Plaintiff's desk.  Plaintiff found the sign to be offensive and discriminatory to her race, ancestry, ethnicity, and religion and removed the sign.

78.    Plaintiff had previously objected to Defendant Klein's use of the term "wandering Jew" as well as other comments she had witnessed as set forth above, but Defendant Klein ignored her concerns.

---

[1] This email was the first time that Plaintiff had ever been informed that her title was HR assistant/nursing labor analytics.

79.    After discovering the sign, Plaintiff complained to Defendant Landau that Defendant Klein had placed the sign on her desk and that she found it offensive and inappropriate, but Defendant Landau dismissed her concerns.  As a result, Plaintiff chose to perform her work upstairs away from her desk, which she informed Defendant Landau.

80.    Just a few hours after objecting to/complaining of race, ancestry, ethnicity, and religious discrimination to Defendant Landau, Plaintiff was abruptly terminated by Defendant Landau and Defendant Klein and informed only that her "services were no longer needed."

81.    In the week leading up to Plaintiff's termination, she had also reminded Defendant Landau that she would need the following week off to care for her children as she was the custodial caregiver that week while there was a break between camp ending and school beginning. However, Defendant Landau never responded.

82.    Following her termination, Plaintiff inquired to Defendants whether she would be paid out her paid vacation time for the following week to care for her children, as Defendants' handbook provided for this; however, she was never provided with an answer.

83.    Upon information and belief, during Plaintiff's employment with Defendants, employees without children were given more flexibility for time off usage.

84.    Instead, Plaintiff was offered a very small amount of unsolicited severance pay if she agreed to waive legal claims against Defendants, including those for discrimination and retaliation, which Plaintiff did not sign.[2]

---

[2] *See e.g.*, *Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115, at *25 (E.D. Pa. May 22, 2013) (employer's decision to offer Plaintiff severance on the condition he waive any  FMLA claims, even though not a company policy, supported finding of pretext in FMLA claim, among other facts); *see also Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085, at *13-14 (W.D. Wash. June 2, 2011) (severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by FRE 408); *Bartlett v. NIBCO Inc.*, 2011 U.S. Dist. LEXIS 28072, at  *11 (N.D. Ind. March 18, 2011) ("Severance pay packages contingent upon a release of claims which are offered *contemporaneously with the notice of termination* are *not* covered by [Rule 408]," and the motive in offering same is admissible evidence in a retaliation claim and is admissible at trial in this case.) (citation omitted); *EEOC v. Republic Servs.*, *Inc*., 640 F. Supp. 2d 1267, 1300 (D. Nev. 2009) (denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy).

85.    Throughout her employment with Defendants, Plaintiff was subjected to hostility, harassment, and discrimination as a result of her familial status, race, ancestry, ethnicity, and religion, as well as her actual/perceived/record of disabilities in violation of Section 1981, Title VII, the ADA, and the PFPO.

86.    Plaintiff was also subjected to retaliation and ultimately terminated because of her objections to/complaints of familial status discrimination, race, ancestry, ethnicity, and religious discrimination, as well as her requests for reasonable accommodations for her medical conditions (*i.e.,* time off for flare-ups of her health conditions).

87.    Defendants also failed to properly accommodate Plaintiff by considering her requested religious and medical accommodations (*i.e.,* the ability to leave early of take time off for the Sabbath, time off for flare-ups of her health conditions, and her request for her job description/duties for her psychiatrist to determine what accommodations she made need in the future) in making the decision to terminate her.

88.    The aforesaid actions by Defendants constitute violations of Section 1981, Title VII, the ADA, and the PFPO.

**COUNT I**
**Violations of 42 U.S.C. § 1981**
**([1] Race, Ancestry, and Ethnicity Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**
**-Against All Defendants-**

89.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

90.    During Plaintiff's employment with Defendants, she was subjected to discrimination through offensive comments, verbal reprimands and derogatory and disparate treatment because of her race, ethnic and ancestral characteristics and/or her objections to the same.

91.    Following her objections to Defendants' management's discriminatory and disparate treatment (discussed *supra*), Plaintiff was abruptly terminated on or about August 17, 2023, for pretextual reasons.

92.    Plaintiff believes and therefore avers that she was really subjected to a hostile work environment and retaliation because of her race, ancestry,[3] and ethnicity,[4] and her objections to the same.

93.    Plaintiff further believes and therefore avers that but for her race, ancestry and/or ethnicity, she would not have been terminated from her job with Defendants.

94.    These actions as aforesaid constitute unlawful discrimination and retaliation under Section 1981.

---

[3] It is very well established that Section 1981 protects all individuals because of their (1) race; (2) ancestry; and (3) ethnic characteristics, and an individual's appearance and physical characteristics are completely irrelevant to a claim under the statute.  *See Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (holding that intentional discrimination based solely on a person's ancestry or ethnic characteristics is racial discrimination that Congress intended Section 1981 to forbid)*; see also Nedeltchev v. Sheraton St. Louis City Center Hotel & Suites*, 335 Fed. Appx. 656 (8th Cir. 2009) (finding European Slavic plaintiff states a cause of action under Section 1981 for harassment because of his ancestry and accent); *Anderson v. Conboy,* 156 F.3d 167, 170 (2d Cir.1998) ("[t]he prohibition against racial discrimination [codified in Section 1981] encompasses discrimination based on ancestry or ethnic characteristics"); *Smith v. Specialty Pool Contractors*, 2008 WL 4410163, at *4 (W.D. Pa. 2008) ("Persons of Jewish ancestry are a distinct race and, therefore, within the protection of 42 U.S.C. § 1981" (citing *Al-Khazraji*, 481 U.S. at 611-13)); *Ganthier v. North-Shore Long Island Jewish Health System, Inc.,* 345 F. Supp. 2d 271, 281 (E.D.N.Y. 2004) (Spatt, J.) ("Under Section 1981, 'race' includes ancestry and ethnicity."); *Quintana v. Byrd*, 669 F. Supp. 849 (N.D. Ill. 1987) (finding that plaintiff's allegations of discrimination based on her ethnic characteristics, as opposed to her country of origin, was sufficient to state a cause of action under Section 1981); *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. N.Y. 1987) ("There can be no question that [Section 1981] includes persons . . . who are of Puerto Rican descent").

[4] *See Al-Khazraji*, 481 U.S. at 613 (holding the matter of race must be considered broadly and noting the understanding of "race" in Section 1981 includes groups "who might be deemed Caucasian today," such as Swedes, Norwegians, Germans, Greeks, Finns, Italians, Russians, Arabs, Spaniards, Hungarians, etc.); *see also Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387, n.7 (10th Cir. 1991) (noting that the concept of race under § 1981 is broad, extending to matters of ancestry which are normally associated with nationality, not race in a biological sense); *Vodopwec v. Anthony's LLC*, 2018 U.S. Dist. LEXIS 129446, *9-10 (D.N.J. 2018) ("Courts have interpreted "race" for purposes of section 1981 to include "ancestry or ethnic characteristics" (quoting *Al-Khazraji*, 481 U.S. at 613); *Commodari v. Long Island Univ.*, 89 F. Supp. 2d 353, 374 (E.D.N.Y. 2000) (holding section 1981 applies to discrimination on the basis of Italian ancestry).

**COUNT II**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**([1] Ancestry, Ethnicity, and Religious Discrimination; [2] Retaliation; [3] Hostile Work Environment;**
**and [4] Failure to Accommodate (religion))**
**-Against Defendant Entities Only-**

95.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

96.     During Plaintiff's employment with Defendants, she was subjected to discrimination, retaliation, pretextual admonishment, and a hostile work environment through disparate treatment as outlined *supra* because of her ancestry, ethnicity, and religion.

97.     Plaintiff objected to/complained of the aforementioned instances of ancestry, ethnicity, and religious discrimination and disparate treatment by Defendants' management, but her concerns were ignored.

98.     Plaintiff requested religious accommodations from Defendants (*i.e.,* time off for Jewish holidays and the ability to leave early on Fridays as needed to prepare for the Sabbath).

99.     Plaintiff was subjected to hostility, animosity, and disparate treatment as a result of her requested religious accommodations.

100.    Plaintiff was then terminated for completely pretextual reasons on or about August 17, 2023.

101.    Defendants failed to properly accommodate Plaintiff by considering her aforesaid requested religious accommodations in making the decision to terminate her.

102.    Plaintiff believes and therefore avers that she was subjected to a hostile work environment and retaliation because of her ancestry, ethnicity, religion, her aforementioned requested religious accommodations, and her objections to/complaints regarding all of the same.

103.    Plaintiff also believes and therefore avers that her ancestry, ethnicity, and religion were motivating and/or determinative factors in the termination of her employment from Defendants.

104.    These actions as aforesaid constitute unlawful discrimination and retaliation under Title VII.

## COUNT III
### Violations of the Philadelphia Fair Practices Ordinance ("PFPO")
([1] Ancestry, Ethnicity, and Religious Discrimination; [2] Retaliation; [3] Hostile Work Environment; and [4] Failure to Accommodate (religion))
-Against All Defendants-

105.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

106.    The aforesaid allegations also constitute violations of the PFPO. Thus, Plaintiff's PFPO claims mirror the claims as set forth in Count II.

107.    Defendants Landau, Redding, and Klein are personally liable for violations alleged herein because they aided, abetted, and/or personally participated in the discriminatory/retaliatory actions described herein.

108.    These actions as aforesaid constitute violations of the PFPO.

## COUNT IV
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Hostile Work Environment; and [4] Failure to Accommodate)
-Against Defendant Entities Only-

109.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

110.    Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities.

111.    Plaintiff kept Defendants' management informed of her serious medical conditions and need for medical treatment and other accommodations.

112.    Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendants; however, Plaintiff did require reasonable medical accommodations at times.

113.    Plaintiff requested reasonable accommodations from Defendants including but not limited to intermittent time off to care for and treat for her aforesaid disabilities.

114.    Plaintiff was subjected to discrimination and a hostile work environment through disparate treatment, pretextual admonishment, and demeaning and/or derogatory treatment because of her aforesaid health conditions and requested accommodations.

115.    Plaintiff was terminated from her employment with Defendants in close proximity to her requests for/utilization of reasonable accommodations (*i.e.,* intermittent time off to care for and treat for her health conditions) and her requests for her job description to aid her psychiatrist in determining what accommodations she may need.

116.    Prior to Plaintiff's termination, Defendants failed to properly accommodate Plaintiff by (1) failing to provide Plaintiff with a job description to aid her psychiatrist in determining what accommodations she may need, thus delaying her ability to determine what accommodations she required and exacerbating her aforementioned health conditions; and (2) using her requested accommodation of time off for her health conditions (*i.e.,* leaving work early as the result of a panic attack) as a means to terminate her.

117.    Plaintiff believes and therefore avers that she was subjected to a hostile work environment and retaliation because of (1) her known and/or perceived disabilities; (2) her record of impairment; (3) her requested accommodations; and (4) Defendants' failure to properly accommodate her health conditions (set forth *supra*).

118.    Plaintiff also believes and therefore avers that her disabilities were a motivating and determinative factor in the termination of her employment with Defendants.

119.    These actions as aforesaid constitute violations of the ADA.

**COUNT V**
**Violations of the Philadelphia Fair Practices Ordinance ("PFPO")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**[3] Hostile Work Environment; and [4] Failure to Accommodate)**
**-Against All Defendants-**

120.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

121.    The aforesaid allegations also constitute violations of the PFPO. Thus, Plaintiff's PFPO claims mirror the claims as set forth in Count IV.

122.    Defendants Landau, Redding, and Klein are personally liable for violations alleged herein because they aided, abetted, and/or personally participated in the discriminatory/retaliatory actions described herein.

**COUNT VI**
**Violations of the Philadelphia Fair Practices Ordinance ("PFPO")**
**([1] Familial Status Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**
**-Against All Defendants-**

123.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

124.    Plaintiff is a single mother, who has shared custody of her two children, is a primarily caregiver, and provides support for the same.

125.    During her employment with Defendants, Plaintiff was subjected to hostility, animosity, and disparate treatment as a result of her familial status.

126.    Plaintiff objected to Defendants' management's harassing and discriminatory treatment toward her as a result of her familial status, but her concerns were ignored.  Instead, she was transferred to another facility and given a different job title.

127.    Upon information and belief, during Plaintiff's employment with Defendants, employees without children were given more flexibility for time off usage.

128.    Plaintiff was then terminated in close proximity to her objections to/complaints of familial status discrimination to Defendants' management.

129.    Defendants Landau, Redding, and Klein are personally liable for violations alleged herein because they aided, abetted, and/or personally participated in the discriminatory/retaliatory actions described herein.

130.    These actions as aforesaid constitute violations of the PFPO.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.    Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.    Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E.    Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F.      Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ.

P. 38(a)(1).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:  _____
Ari R. Karpf, Esq.
8 Interplex Drive
Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801

Dated:  October 2, 2024

25

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

CIVIL ACTION

Elisha Richter

v.

NO.

York Operating, LLC d/b/a York Nursing and Rehabilitation Center, et al.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.            ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.            ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.            ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)            ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.        (X )

| | | |
|---|---|---|
| 10/2/2024 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _114 Birch Avenue, Bala Cynwyd, PA 19004_

Address of Defendant: _6212 Walnut Street, Philadelphia, PA 19139; 201 N Presidential Blvd, Bala Cynwyd, PA 19004_

Place of Accident, Incident or Transaction: _Defendants place of business_

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?            Yes [ ]   No [X]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?            Yes [ ]   No [X]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?            Yes [ ]   No [X]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?            Yes [ ]   No [X]

I certify that, to my knowledge, the within case [ ] is / [X] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _10/2/2024_   _____   _ARK2484 / 91538_
*Attorney-at-Law / Pro Se Plaintiff*      *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.   Federal Question Cases:**

- [ ] 1. Indemnity Contract, Marine Contract, and All Other Contracts
- [ ] 2. FELA
- [ ] 3. Jones Act-Personal Injury
- [ ] 4. Antitrust
- [ ] 5. Patent
- [ ] 6. Labor-Management Relations
- [X] 7. Civil Rights
- [ ] 8. Habeas Corpus
- [ ] 9. Securities Act(s) Cases
- [ ] 10. Social Security Review Cases
- [ ] 11. All other Federal Question Cases
  *(Please specify):* _____

**B.   Diversity Jurisdiction Cases:**

- [ ] 1. Insurance Contract and Other Contracts
- [ ] 2. Airplane Personal Injury
- [ ] 3. Assault, Defamation
- [ ] 4. Marine Personal Injury
- [ ] 5. Motor Vehicle Personal Injury
- [ ] 6. Other Personal Injury *(Please specify):* _____
- [ ] 7. Products Liability
- [ ] 8. Products Liability – Asbestos
- [ ] 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _Ari R. Karpf_ , counsel of record *or* pro se plaintiff, do hereby certify:

[X] Pursuant to Local Civil Rule 53.2, § 3(c ) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[ ] Relief other than monetary damages is sought.

DATE: _10/2/2024_   _____   _ARK2484 / 91538_
*Attorney-at-Law / Pro Se Plaintiff*      *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

RICHTER, ELISHA

## DEFENDANTS

YORK OPERATING, LLC D/B/A YORK NURSING AND REHABILITATION CENTER, ET AL.

**(b)** County of Residence of First Listed Plaintiff   Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                  *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 460 Deportation |
| (Excludes Veterans) | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); Section 1981 (42USC1981); Title VII (42USC2000)

Brief description of cause:
Violations of the ADA, Section 1981, Title VII and the PFPO.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE   10/2/2024

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____